## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

_____

|  |  |  |
|---|---|---|
| KHADIJEH KHATIB, | : | |
| Plaintiff | : | Civil Action |
| | : | File No: |
| Vs. | : | |
| | : | Jury Trial Requested |
| JEFFERSON PARISH PUBLIC SCHOOL | : | |
| SYSTEM, JEFFERSON PARISH SCHOOL | : | |
| BOARD, DR. CADE BRUMLEY, individually | : | |
| And in his capacity as SUPERINTENDENT OF | : | |
| JEFFERSON PARISH SCHOOLS, SCOTT | : | |
| DEEMER, individually and in his capacity as | : | |
| PRINCIPAL, of Rudolph Matas School | : | |
| Defendants | : | |
| | : | |

_____

## **COMPLAINT**

NOW INTO COURT COMES, through undersigned counsel, KHADIJEH KHATIB ("Ms. Khatib"), Plaintiff herein who brings this complaint seeking damages for intentional retaliation against her after reporting allegations of mistreatment and the potential abuse of a disabled and special needs student at Rudolph Matas School, in the Jefferson Parish School System.

This action arises under the rehabilitation act of 1973, Section 504, 29 U.S.C. §794; the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §1983, the anti-retaliation

1

provisions of the Americans With Disabilities Act, 42 U.S.C. §§12131-12134, 12203 (1995) (Section 503 of the ADA) and state laws regarding whistleblowing and protections for State employees.

Ms. Khatib, formerly a teacher in the Jefferson Parish School System, was terminated after attempting to report possible abuse or neglect against students with disabilities and special needs students. Plaintiff's reporting focused on the possible abuse and neglect of a student in the classroom where she was a paraprofessional and the administration's failure to provide the student with a safe learning environment or to adequately respond to concerns raised properly and as required by law. This continued separate retaliation for her mandatory reporting of mistreatment of at least one child in the school where she was assigned to his classroom. After making her report of abuse, the plaintiff was improperly reprimanded and, when she sought to inform the child's parents, she was removed from her position of approximately 17 years and kept under a course of constant disciplinary review in order to silence her efforts at reporting the situation.  Later, Ms. Khatib was terminated for her response to that removal; however, it is clear she was fired for complying with the law and attempting to reporting abusive situation.

## JURISDICTION AND VENUE

### 1.

This action arises under authority vested in this court by virtue of 29 U.S.C. §794 a(b); 42 U.S.C. §1983 and §1988; and 42 U.S.C. §12203. This Court has jurisdiction pursuant to 42 U.S.C. §§1331 and 1343. This court has supplemental jurisdiction of the state claims under 42 U.S.C. §1367 as that claim and facts arise against the same parties and from the same operative corps of material facts. At all times relevant to this complaint, the actions of defendants were under the color of law. Venue is proper in this court is the claims arose here and the defendants reside in this district.

## PARTIES

### 2.

Plaintiff resides and that it is a citizen of Jefferson Parish, Louisiana. At all times relevant to this complaint, Ms. Khatib was employed by the Jefferson Parish Public School System ("JPPSS"). Specifically, she was a paraprofessional working in a special education classroom with disabled students at Rudolph Matas school.

### 3.

Defendant, Dr. Cade Brumley ("Dr. Brumley"), was at the time of this incident the superintendent of the JPPSS. Dr. Brumley was a final decision maker responsible for all operations of the JPPSS, including the implementation of JPPSS

policies and procedures. Dr. Brumley also ultimately terminated the plaintiff, condoning a course of harassment and discrimination against her for her actions in advocating for a special needs' student, and he is sued individually and in his official capacity as the Chief Executive Officer of the JPPSS.

4.

Defendant the Jefferson Parish Public School System, and more particularly the Jefferson Parish School Board ("JPSB") was at the time of this incident the employer of Ms. Khatib. The defendant JPPSS is a legal entity subject to suit. The JPPSS operates the school system throughout Jefferson Parish, by and through the Jefferson Parish School Board.  JPPSS and/or the JPSB is Ms. Khatib's employer and responsible, along with Dr. Brumley, for protecting her rights to fully participate as a special education paraprofessional of children with disabilities in the school where she was appointed.  JPPSS and/or the JPSB is of recipient of federal funds, as that term is used in under Section 504, and a public entity as that term is used under the ADA.  Further JPPSS and/or the JPSB has agreed and accepted responsibility for complying with and meeting the requirements of Section 504 and the ADA.

5.

Defendant Mr. Scott Deemer, was at the time of this incident, and is currently, the principal at Rudolph Matis, a school within the JPPSS, governed by

the JPSB and supervised by Dr. Brumley.  He is sued is in his individual capacity

as an administrator at Rudolph Matis.  As principal of the school were Ms. Khatib

worked, Mr. Deemer was at all relative times the supervisor and decisionmaker at

the school with regards to personnel. He personally and intentionally acted against

the Plaintiff's exercise of her protected rights and sought retribution against her for

reporting dangerous classroom conditions as well as the potential abuse and

neglect of students with disabilities attending the school.

## FACTUAL ALLEGATIONS

### 6.

JPPSS hired Ms. Khatib to work as a paraprofessional in the schools

approximately seventeen years ago.  While her job was to assist the classroom

teachers, she ultimately began to work directly with the students with special

needs, providing them with their curriculum and other needs while they were in the

dedicated special education setting.  Particularly, Ms. Khatib had worked with

students with special needs and disabilities for several years prior to the 2018-2019

school year and, as the parent of a special needs child, herself, she was intimately

familiar with the needs and requirements of the children, and that they varied from

child to child.

7.

In the many years prior to the 2018-2019 school year Ms. Khatib received very good evaluations by both the prior principal at her school, and initially by Mr. Deemer, the new principal at Rudolph Matas school.  Ms. Khatib was dedicated to the students, and she even rode the school bus with a special needs student to insure they made it to and from school safely.

8.

During the 2018-2019 school year, she was assigned as a paraprofessional in the same classroom where she had previously taught at Rudolph Matas school for some time.  She also provided regular curriculum to a special needs' student within that classroom while the classroom teacher worked with some of the children in the class.

9.

In March of 2019, Plaintiff was working with one student at Rudolph Matas Elemantary and Middle School, when she observed the teacher in her classroom become angry at the student throughout the morning.  Then, at approximately 12:30, when she returned to her classroom after lunch, she noticed that the child had been put in a small children's playhouse, and she observed the classroom teacher move a large, heavy table and some chairs to block its entrance, effectively restraining him.

10.

Upon noticing that the child had been restrained, she asked the classroom teacher what was going on, and told her she was concerned the child was going to hurt himself, and the teacher ignored her concerns, telling her not to worry about it. The child remained crying for more than an hour, and when she tried to take him out for recess, she was told to leave him in time out and to leave the room to allow the teacher to handle it.

11.

Because she had to attend to the other children, she left the classroom, and asked other assistants in the building to check on the child and please make a report to the social workers.  At around 2pm, approximately, she returned to the classroom and found the child was still put in the playhouse and was still restrained such that he could not get out, while the classroom teacher was ignoring him. Because she was a paraprofessional and had not received instruction regarding how to report the incident to either the parents or the principal, she reported the incident to all the people she was able to report it to.  She also attempted to personally remove the barricade but was admonished by the teacher in her classroom who told her to leave it in place.

12.

After that, she asked other teachers to come into the classroom to assist her, and while they offered to assist in removing the barricade, they all could see she was fearful of retribution.  At approximately 2:30, after previously calling the school social workers and the school disciplinarian, complaining that the child had been ignored for too long and asking for assistance, they finally came.  The child was ultimately removed from the playhouse at the end of the school day, after soiling himself and attempting to inflict harm upon himself.  The child was so traumatized, he then hid under a table for the duration of the school day, refusing to allow any teachers to touch him.  Because her duties required her to ride a school bus with another disabled child, she asked the social workers if they were going to make a report about what they had observed, and they said it was a case of "he said, she said."

13.

The Plaintiff then went to the office to determine if the Principal, Scott Deemer, was available, and she was informed he was not there and that a Ms. Alexander was in charge.  Ms. Khatib tried to tell Ms. Alexander what had happened, and she literally put her hands over her ears and stated she did not want to hear about it and to deal with the principal when he returned.  The Plaintiff had never been given an emergency number for the principal or other reporting

information, and to her knowledge as a paraprofessional she reported the incident

to all of the possible responsible individuals in her chain of command at the time.

14.

On the following day, the Plaintiff was called by the school nurse to ask if

she knew anything about what happened to the child, because the nurse had

received a concerned call from the child's mother who reported that he had to

receive medical treatment and they were trying to find out what had happened.  At

that time, she became aware that the child's parents were not informed that he had

been restrained and she immediately told the nurse what she knew.  Ms. Khatib

asked if she should make a report to the principal, as she did not know whether he

had returned or not, and she was told that the nurse would report the incident to

him, and she would be contacted for questions.  Again, despite her seventeen (17)

years of work for the JPPSS, she was never trained in reporting practices, provided

with a chain of command for reporting, nor was she given any emergency

reporting contacts.

15.

On the following day, March 21, 2019, the Plaintiff was called to the office

of Principal Scott Deemer, at Rudolph Matas Elementary and Middle School.

Before Ms. Khatib was called there, the classroom teacher was called to speak to

him, and the classroom teacher sent her a text message stating that she did not

9

block the child in, which seemed to be an attempt by the teacher to influence what she would say.

16.

Ms. Khatib eventually got the opportunity to speak to Mr. Deemer at the end of the school day, and told him about both the incident and the text message she received from the classroom teacher, at which point he demanded that she give him her personal phone and an immediate statement.  The Plaintiff attempted to remind Mr. Deemer that she could not stay because she was riding the bus with another student, and told him she would bring him a statement in the morning, something he had to her personal knowledge told other teachers they could do.  After she left to accompany the other child home, Ms. Khatib received a call from Mr. Deemer telling her to report to the JPPSS offices instead on the following morning.

17.

On the morning of March 22, 2019, the Plaintiff went to the office of the Jefferson Parish Public School System to bring in the statement she had prepared about the events which occurred at Rudolph Matas Elementary and Middle school. Instead of taking her statement, just as every other teacher was able to give their statement and returned to work, Ms. Khatib was given a performance conference and reprimanded concerning the event. She was the only employee, to her knowledge, who had been told to report to the JPPSS offices for such a reprimand,

10

and what is notable here is that she was not only reprimanded for "improper disciplinary measures," but she was also reprimanded for an event which occurred apparently 5 weeks prior to the events at issue herein.

18.

When the plaintiff gave her statement to the officer at JPPSS, which she had already prepared, and allowed him to take a copy of the message on her cell phone from the classroom teacher, she was told that she was not being disciplined and that while the matter was being investigated all they were going to do was ask her to take a class on how to properly report incidents such as these. She did not agree with being reprimanded and refused to initially sign the document; however, once she was told this, she stated that she would be happy to take a class and asked that all of the other teachers and assistants at the school be made to do the same.  At that point, she signed the document assuming the matter was closed.  At no time did any individual explained to her that she was being accused of the very events that she was reporting herself and attempting to bring to light.

19.

Thereafter, she returned to school, and she was informed that the classroom teacher had been suspended with pay; however, she never had the opportunity to find out for herself. Another teacher was sent to the classroom to work, and the student eventually returned to school. She noticed, however, that the student's

behavior continued to worsen and was not like it had been previously. Specifically, while he may have difficulties working with other people, he always did his work with her and as he was on the normal curriculum he had no problem keeping up with his work. She knew that he was getting therapy, and that his mother was concerned about things that it happened to him, but she wondered whether or not his parents had even been told about what happened. She even specifically questioned Mr. Deemer as to whether or not he had told the child's parents, and she was told that she needed to be quiet and mind her business.

20.

Then, on April 15, 2019, after the child was having another particularly hard day, she decided to call his mother to see if he was getting therapy.  She did not speak to the child's mother, but left her a message from the school telephone. Because Ms. Khatib, the Plaintiff, also has her own special needs child, she knew that the child would not be able to move past what had happened if his parents were uninformed and could not work through it in therapy.

21.

Later that same day, she was called to Mr. Deemer's office and was told by him, while he had an employee of JPPSS on the phone, that she was being transferred to Westwego as her punishment for the events which happened in her classroom.  She stated that it made no sense for her to be punished when the

teacher was suspended, and she had given them clear evidence as to what happened.  She also stated she could not work so far from home because of her own special needs' child, and asked to take a leave of absence.  Ms. Khatib was told that was not an option because she was still under investigation—a process it is believed she was kept under to keep her quiet—and at that point the Plaintiff stated she would resign that position for another in the school system the following year.  She then got up to leave and told Mr. Deemer she was going to expose his sh--, because it was becoming more and more clear to her that the child's parents were purposefully being kept in the dark about what had happened to him.

22.

Mr. Deemer then became clearly agitated and tried to force her to stay in his office; however, Ms. Khatib took a resignation form and started to leave so that she could calm down. When she left Mr. Deemer's office, as the school's campus is very large, she went one direction, and he followed her out of the building and went a completely different direction around other buildings to try to head her off. Ms. Khatib went to her classroom to try to get her personal items in some things out of the refrigerator; however, Mr. Deemer tried to force her to come back to his office despite the fact that she clearly wanted to leave. She remained calm and went to the bus to accompany the child home that she typically rode with; however, Mr. Deemer sent someone onto the bus to retrieve her and told her that

she could not ride home in her usual manner, effectively trapping her on the campus without transportation.

23.

She then went to a friend and asked them if they could give her a ride home, and asked them for the keys to their car so she could wait there quietly she was trying to remain calm. She was on the phone the entire time talking to other people, and she was not engaged in conversation with Mr. Deemer or yelling. Mr. Deemer then took the extraordinary step to follow her out into the parking lot and demanded she get out of her friend's car and come back to the office. It was clear that he was trying to control not only her actions, but her rhetoric concerning the events that had occurred. She was able to then get a ride to pick her up and she left.

24.

She attempted to send her statement as to the events that occurred to both human resources and Mr. Deemer, but she was informed that she was being written up again, this time for using profanities and yelling/creating a scene while going around the campus, which was not true.  Mr. Deemer seemed determined to ensure that she would be terminated, and he sent another right up to human resources requesting termination which would effectively end her benefits and affect her retirement after 17 years of working. All of this on the heels of her questions to

him about whether or not he had appropriately reported the abuse of the student under his watch to that child's parents.

25.

On April 17, 2019, she received a letter from Dr. Brumley telling her that she would be suspended without pay until further notice, telling her that she could not report to any JPPSS facilities, and giving her written warning that she was not authorized to communicate with the students or their parents because, if she did so, there would be additional disciplinary action up to, and including termination of employment. She was told that the matter would be under investigation, and that she would have the opportunity to provide statements and attend a hearing, where her own witnesses would be heard from, but what really happened was very different.

26.

On May 11, 2019, with approximately one day's notice, she was given notification that a hearing would occur on May 13, 2019. Despite the late notice, she and her attorney, the undersigned, made every effort to not only appear but cooperate in every way possible. On that day, Ms. Khatib learned that none of her witnesses of been spoken to, and that while Mr. Deemer had done his best to get statements from every employee on the campus even if they only had tangential knowledge of what actually happened, in an attempt to paint her as insubordinate

15

and problematic, but she was told that she couldn't have anyone speak on her own behalf. Her attorney, the undersigned, was not even allowed in the room because she wasn't a "union attorney," so she was effectively denied of the right to counsel, and denied of the opportunity to present evidence on her own behalf.

27.

What is glaringly obvious here though, was the fact that none of this would have occurred if Mr. Deemer had done his job and if he had reported the abuse of a child under his watch to that child's parents. Instead Mr. Deemer, the JPPSS, the JPSB through their policies of quieting employees and effectively preventing them from reporting abuse, and Dr. Brumley engaged in a course of effectively silencing the plaintiff and ensuring that Ms. Khatib would not be able to report the abuse that occurred at Rudolph Matas Elementary and middle school. The plaintiff was left on suspension without pay until July 30, 2019, when she was terminated. The plaintiff remains unemployed, and it became clear to her and the undersigned that the child's parents were not informed of any of the events that occurred at Rudolph Matas, when they finally had the opportunity to reach out to them in August 2019.

28.

Ms. Khatib suffered, and continues to suffer, both economic and psychological damages, as a result of the retaliation she has suffered by the defendants.  Her physical and emotional health has deteriorated.  She has become

anxious and encounters daily struggles to confront the stressors of unemployment, and in addition to the financial burdens of unemployment, she is constantly concerned about the safety and wellbeing of the students at Matas.

29.

In response to Ms. Khatib;s advocating on the half of the disabled student at Matas, defendants intentionally retaliated against her by first forcing her to go to another school which would have put her too far away from her own special needs child (whom they were aware of), and then terminating her employment when she refused to succumb to discipline for matters that were not her fault after she reported abuse perpetrated by others.

30.

Ms. Khatib was later terminated by recommendation of the principal, Mr. Deemer, and implemented by superintendent Dr. Brumley, without any regard for the fact that all of the disciplinary measures being taken against her for a direct result of her actions in trying to protect a child from being abused in the school. This retaliation was intentionally committed with the purpose of silencing her reporting of potential abuse and neglect of students within the school.

31.

The decision to move Ms. Khatib to a new school as a "disciplinary measure," then to discipline her for refusing to accept that discipline, and

ultimately to terminate her was harassment, retaliation, and prohibited discrimination by virtue of her advocacy for a disabled child. It was intended to chill her speech and is retribution for her reporting of mistreatment and illegal abuse of the student.

32.

Defendants intentionally and with reckless indifference to her federally protected rights did not offer Ms. Khatib any position within the school system, instead in terminating her employment they showed blatant disregard for her actions in trying to protect a student and engaged in harassment and discrimination by retaliating against her for her advocacy.

33.

Ms. Khatib has been unable to secure comparable employment to the job she had for 17 years prior to this incident. The Plaintiff has made, and continues to make, reasonable efforts to mitigate her damages by securing substitute employment; however, she has not been offered any positions at this point.

34.

Ms. Khatib's determination has negatively impacted, and continues to impact her reputation as a teacher and clouds her performance record. The stigma negatively impacted, and continues to impact, Ms. Khatib's ability to secure alternative and future employment. Defendants knew, and have known, that

nonrenewal and negative performance reports adversely impact an educator's ability to secure gainful employment, either in Jefferson Parish, within the State of Louisiana, or elsewhere.

35.

Ms. Khatib's advocacy and her position in protecting the child at issue here was known by all defendants at the time of their actions, up to and through the decision made by the superintendent to terminate her employment, after admonishing her and preventing her from speaking to anyone including the student's parents by using her job as a sword over her head, and in effect silence her. Ms. Khatib's protected actions were the proximate and legal cause of the adverse observations and actions she took thereafter, adverse employment actions and decisions, designed and created to establish a pretextual basis for her nonrenewable/termination and because the decision in action to terminate her employment.

36.

The actions of the defendants in silencing Ms. Khatib and creating a pretext to terminate her employment were knowing and intentional. Such actions were taken with personal malice by the individual defendants, and in reckless disregard for plaintiff's individual rights and her legal and ethical obligations to report all evidence of abuse against a child that she encounters, as well as in response to her

professional commitment to protect the vulnerable population of students with disabilities at her school. Plaintiff had a duty to report what she saw, and she acted in furtherance of that responsibility when she both went to the principal and ultimately attempted to go to the student's parents in an attempt to try to ensure that he would no longer be abused.

37.

Defendant's retaliatory conduct was in response to Ms. Khatib,s advocacy and her opposition to the discriminatory treatment under the ADA and section 504 some of the disabled students at Matas. Further the written allegations against her, and course of reprimand that followed sought to chill and silence her speech as a citizen by punishing her with negative employment actions.

38.

Ms. Khatib has suffered significant and ongoing damage as a result of JPPSS and/or the JPSB and other defendant's intentional, illegal and discriminatory conduct, including severe psychological or emotional trauma, mental suffering and wounded feelings.

39.

**COUNT ONE: Violations of Section 504 and American with Disabilities Act**

The allegations set forth in paragraphs 1 through 38 are incorporated by reference herein.

40.

Ms. Khatib was a teacher in the JPPSS under the governance of the JPSB

and Dr. Brumley. She was charged with providing appropriate educational services

as a paraprofessional for students with disabilities at Matas and ensuring safety and

welfare of those same students. She is responsible to her students and her

profession to ensure their welfare and safety, and to take action if there is a cause

to believe they are subject to abuse and/or neglect. The students on whose behalf

Ms. Khatib advocated were qualified individuals with disabilities within the

meaning of Section 504 and the ADA. They, by virtue of their age and disabilities

had limited abilities to protect and advocate for themselves, and they rely on the

timely and diligent action of their teachers and educational para-professionals such

as Ms. Khatib.

41.

Ms. Khatib participated in proceedings and engaged in protected conduct

while advocating on behalf of a student she perceived to be abused while at school.

Particularly, that student was subjected to dangerous and appropriate educational

practices which she felt rise to the level of abuse. In her actions as a

paraprofessional, she reported what she saw to every possible person that she could

think of, and complied with all investigations.  Further, when she later learned that

the child's parents had not been properly notified of the abuse that had occurred to

him, and the restraint he underwent in violation of state laws, and she sought to reach out and make sure that the child was okay, her principal sought to have her transferred to another school as a means of silencing her about this event. When she refused that transfer, which would have placed her too far away from her own special needs child, all of the actions that took place thereafter were still actions meant to silence her for engaging in advocacy on behalf of the special needs child.

42.

In response to Ms. Khatib's advocacy on behalf of that disabled child, defendants acted in concert to illegally retaliate against her by opting to terminate her employment. e.g., 34 CFR §100.7 (E); Suttlegoode v. Portland Sch., 371 F.3d 503, 512 n.6 (9th Cir. 2004); Rinehart v. Albuquerque Public School Board of Education, 595 F.3d 1126, 1132 (10th Cir. 2010); Sweet v. Tigard-Tualatin School District, 124 Fed Appx. 482 (9th Cir. 2005). See also: Powell v. Valdosta City School District, et al. enclosed site.

43.

Ms. Khatib brings her claims under Section 504 against the Defendant School District and the Superintendent in his official capacities, seeking all appropriate remedies and procedures, and rights as otherwise set forth under Title VI of the Civil Rights Act of 1964, or as otherwise provided by law. See 29 U.S.C.

§794 (a) (b)(2009). She seeks an award of declaratory, equitable, nominal and compensatory relief and damages appropriate in the circumstances.

44.

Ms. Khatib brings her claim against the JPPSS and Dr. Brumley in his official capacity under the anti-retaliation provisions of the ADA. See 42 U.S.C. §12203. She seeks an award of damages as is reasonable in the premises and all relief available in the circumstances.

45.

Ms. Khatib brings her claims against defendants, JPPSS, the JPSB, Scott Deemer and Dr. Brumley, individually, for retaliation under the anti-retaliation provisions of the ADA. See 42 U.S.C. §12203. She seeks an award of damages as is reasonable in the premises and all relief available in the circumstances

46.

**COUNT II: Violations of the Louisiana Whistleblower Act
LSA-R.S. 42:1169 – Freedom from Reprisal for Disclosure of Improper Acts
LSA-R.S. 23:967 – Employee protections from reprisal; prohibited practices;
remedies**

The allegations set forth in paragraphs 1 through 38 are incorporated by reference herein.

47.

LSA-R.S. 42:1169 provides:

§1169. Freedom from reprisal for disclosure of improper acts

A. Any public employee who reports to a person or entity of competent authority or jurisdiction information which he reasonably believes indicates a violation of any law or of any order, rule, or regulation issued in accordance with law or any other alleged acts of impropriety related to the scope or duties of public employment or public office within any branch of state government or any political subdivision shall be free from discipline, reprisal, or threats of discipline or reprisal by the public employer for reporting such acts of alleged impropriety. No employee with authority to hire, fire, or discipline employees, supervisor, agency head, nor any elected official shall subject to reprisal or threaten to subject to reprisal any such public employee because of the employee's efforts to disclose such acts of alleged impropriety.

B.(1) If any public employee is suspended, demoted, dismissed, or threatened with such suspension, demotion, or dismissal as an act of reprisal for reporting an alleged act of impropriety in violation of this Section, such employee shall report such action to the board.

(2) An employee who is wrongfully suspended, demoted, or dismissed shall be entitled to reinstatement of his employment and entitled to receive any lost income and benefits for the period of any suspension, demotion, or dismissal.

...

LSA-R.S. 23:967 also provides:

§967. Employee protection from reprisal; prohibited practices; remedies

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated,

the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.

D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

48.

By reporting acts of abuse, mistreatment or neglect and unlawful discrimination of students with disabilities and advocating for appropriate educational services of those same students, Ms. Khatib disclosed illegal, unethical, and wholly inappropriate treatment of students with disabilities by JPPSS, the JPSB, Scott Deemer, and Dr. Brumley who jointly and individually who sought to silence her.

49.

On information and belief, defendants intentionally and in retaliation for Ms. Khatib's reporting of their legal, unethical and wasteful conduct did not offer the Plaintiff any further employment and terminated her employment by retaliating

against her for every action she took after the moment that she sought to disclose the wrongful treatment of a student being abused on school property.

50.

JPPSS, the JPSB and Dr. Brumley's decision to terminate plaintiff's employment, at the recommendation of Scott Deemer, was retaliation for her attempt to report abuse of a special needs child.  Further, As the result of the defendant's retaliatory actions, plaintiff was wrongfully terminated from her position and lost wages and benefits that would have accrued, including sick time, compensatory time and accumulated pension vesting time. All of this after working in the same job where she had excellent reviews for most of 17 years.

51.

**COUNT III: Intentional Infliction of Emotional Distress**

The allegation set forth in Paragraphs 1 through 38 are incorporated by reference herein.

52.

Defendant Deemer subjected Ms. Khatib to unjustified and continued retaliatory conduct through his control over her employment and rhetoric by keeping her in a state of investigation so she could not exercise her rights and notify the parents of a child who was abused under his watch.  His control over Ms. Khatib exists by virtue of their special supervisor/subordinate relationship and

is exercised by engaging in hostile work-related discussions and recommending her termination.

53.

Each retaliatory act was insulting in nature and outrageous. Asking her, after 17 years, to report to a new school which would put her both outside of her living area and away from her own special needs' child was nothing but retaliatory and inappropriate. Further, all of the actions that took place after the child was abused in March of 2019 accumulated and constituted an appropriate conduct. This conduct was harassing and violated the prior federal prohibition against unlawful discrimination on the basis of a person's disability including unlawful harassment or retaliation for the exercise of protected actions.

54.

These actions by Mr. Deemer were taken with personal malice toward Miska team, and it was made clear that she was going to be silenced because she was kept in a state of constant employment review since the actions took place which would prohibit her from being able to speak to anyone as to what actually occurred to the child.

55.

Defendants, JPPSS, the JPSB, Dr. Brumley and Mr. Deemer were aware that such retaliatory conduct would result in a stressful situation for Ms. Khatib and

subject herto substantial emotional distress. They were aware of Ms. Khatib's vulnerable and subordinate work relationship to them and aware of the importance and need for her to maintain her employment.

56.

Defendant's retaliation was intentional, extreme and outrageous, reckless disregard for Ms. Khatib's rights. The conduct was the cause of actual, physical, and severe emotional harm to Ms. Khatib and her family.

57.

Such retaliatory actions and abuse of power were improper and illegal, and known as such defendants. Defendants' actions give rise to a claim in tort for intentional infliction of emotional distress. Ms. Khatib seeks an award of declaratory, equitable, nominal, compensatory relief and damages, and is against individual dependents, aggravated damages, as set by the court and jury.

**PRAYER FOR RELIEF**

Wherefore, plaintiff, KHADIJEH KHATIB seeks the following:

A.)   Backpay for the value of her employment position from the time the retaliatory termination to the time she either secures gainful employment or is able to return to her position or another similar

position within the Jefferson Parish school system, if any, also the

subject difference in benefits for that employment;

B.)    reimbursement of all of the benefits she would have received but for

her late illegal termination; front pay for the value of her position,

taken from her by the discriminatory and retaliatory actions of the

defendant;

C.)    damages incurred as a result of JPPSS's and other defendants illegal

to retaliatory action; punitive damages as against the individual

defendants is aggravated damages as that term is allowed under

Louisiana and Federal law;

D.)    an award of reasonable attorney's fees, expenses, and cost of litigation

pursuant to 42 U.S.C. §1988 and other applicable laws; and,

E.)    award of such other and further relief as this court deems just and

proper.

A jury Trial is requested.

RESPECTFULLY SUBMITTED

_____

SHARRY I. SANDLER (29669)
**SANDLER MICHAUD, L.L.C.**
1050 S. Jefferson Davis Parkway, Suite 219
New Orleans, Louisiana 70125
Telephone:  504.291.8300
Facsimile:  504.291.8301
Email:        sharry@smnola.com